UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>JOHN LAMBERT,<br>    a/k/a "Eric Pope,"<br><br>              Defendant. | 19 Cr. 571 (VEC) |

**THE GOVERNMENT'S SENTENCING SUBMISSION**

                                            GEOFFREY S. BERMAN
                                            United States Attorney for the
                                            Southern District of New York
                                            One St. Andrew's Plaza
                                            New York, NY 10007

Benjamin Woodside Schrier
Assistant United States Attorney
    *Of Counsel*

## INTRODUCTION

The Government respectfully submits this memorandum concerning the sentencing of John Lambert, a/k/a "Eric Pope," the defendant in the above-captioned case, which is scheduled to take place on November 18, 2019. For the reasons set forth below, the Court should impose a sentence of imprisonment within the United States Sentencing Guidelines (the "Guidelines or "U.S.S.G") range (the "Stipulated Guidelines Range") described in the August 6, 2019 plea agreement between the parties (the "Plea Agreement"), which is 15 to 21 months' imprisonment.

### I.   The Offense Conduct

John Lambert is not a lawyer. He does not have a law degree. He has never worked in the legal field. He is a 23-year-old college student living in Tennessee and working toward his bachelor's degree. And yet, from August 2016 through April 2018, Lambert pretended to be a lawyer—a high-powered, experienced lawyer in New York City, who had attended one of the best law schools in the country, worked at one of the most prestigious law firms in the world, and represented thousands of clients through his own law firm, at which he was a name partner.

All of this was a lie. To perpetrate that lie, Lambert created fake websites for his law firm and an associated consulting firm, fake addresses and phone numbers, and fake names and biographies for the lawyers who supposedly worked at his firm, including "Eric Pope," his personal alias. Then he advertised himself and his firm on web-based platforms for freelancing services, and began tricking clients into hiring him to provide legal advice.

These clients came to Lambert with legal needs that were often pressing, and sometimes desperate. The April 11, 2019 Complaint and final presentence investigation report (the "PSR") describe in detail several of those clients, and the manner in which Lambert defrauded them, but perhaps most illustrative of the egregiousness of his conduct is his victimization of the individual described in the Complaint and PSR as Credit Victim-1. *See* Complaint ¶¶ 20-21; PSR ¶¶ 13-19.

1

In the summer of 2017, Credit Victim-1 sought a lawyer to assist him with correcting errors in a credit report prepared by a major credit reporting agency. More generally, Credit Victim-1 was having credit issues that were starting to negatively affect him personally and professionally in significant ways. When Lambert connected with Credit Victim-1 on one of the web-based freelancing platform on which he advertised, he assured him that he had worked with hundreds of clients, including "tech moguls" and "entrepreneurs," and had gained experience in corporate, finance, and property law. Credit Victim-1 must have been relieved—here was a qualified, credentialed lawyer who could help resolve the issues that had been plaguing him.

But Lambert never resolved Credit Victim-1's credit issues. It appears as though he never even attempted to do so. Instead, Lambert strung along Credit Victim-1 for months, taking payment after payment from him, representing that he was in contact with the credit reporting agency and making efforts to resolve the issues, and that he might even file a lawsuit against the agency and obtain an out-of-court settlement. Of course, Lambert never filed the lawsuit. He could not have done so, because he was not a lawyer.

Credit Victim-1 grew increasingly desperate. He withdrew money from his 401(k) account to keep paying Lambert for his ongoing representation. On July 7, 2018, Credit Victim-1 sent an email to Lambert, writing, "I wanted to know if you had heard anything at all form [sic] [the credit reporting agency] at this point? Should be going ahead and filing suit at this point since they are taking no action at all? I applied for a much better job recently and I was declined the job because the potential employer was not able to pull my credit. This was a dream job for me and would have been 50k more per year for me that I was denied due to them not being able to pull my credit." Complaint ¶ 20(k); PSR ¶ 17. Lambert never responded; nor did he respond to several additional emails that Credit Victim-1 sent him. He was content to take

2

Credit Victim-1's money and leave him to fend for himself.  From July 2017 through April 2018, Credit Victim-1 paid Lambert over $10,000.

This conduct was emblematic of Lambert's fraud, and underscores its invidious nature. Not only did he harm individuals like Credit Victim-1 by taking their money and providing them with nothing in return—by pretending that he was zealously representing them, he also prevented them from obtaining real legal advice from a real lawyer.

Further, it can be inferred from the context of Lambert's crime that many of his victims were especially vulnerable.  These were individuals and small businesses who likely sought a lawyer on a web-based platform because of their relative lack of sophistication regarding the legal field.  Presumably, they did not have family members or friends who were lawyers, who might have been able to direct them toward a lawyer with a pertinent specialty and a reasonable fee.  It would be bad enough if Lambert's victims had been large corporations who were sophisticated consumers of legal services; it is even worse that they were not.  In total, Lambert defrauded more than two dozen victims of tens of thousands of dollars.

## II. The Guidelines Calculation

In the Plea Agreement, the parties agreed to a Stipulated Guidelines Range of 15 to 21 months' imprisonment, which was based on an offense level of 14 and a criminal history category of I.  In the PSR, however, the U.S. Probation Office ("Probation") determined that the Guidelines range is 21 to 27 months' imprisonment, based on an offense level of 16 and a criminal history category of I.  The basis for the disparity is Probation's view that U.S.S.G. § 3B1.3 applies, which states that the offense level shall be increased by two levels if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  Application Note 3 to U.S.S.G. § 3B1.3 provides that the adjustment also applies in a case in which the defendant

3

provides sufficient indicia to the victim that the defendant legitimately holds a position of private or public trust when, in fact, the defendant does not.

The Plea Agreement, however, precludes the Government from seeking any departure or adjustment to the Stipulated Guidelines Range, or in any way suggesting that the Court consider such a departure or adjustment under the Guidelines, and the Government does not do so here.

**III.     Application of 18 U.S.C. § 3553(a) Factors**

In this case, a sentence within the Stipulated Guidelines Range of 15 to 21 months' imprisonment would be sufficient, but not greater than necessary, to reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; and protect the public from further crimes of the defendant, as required by 18 U.S.C. § 3553(a).

The offense in this case was extraordinarily serious. Clients look to lawyers to help them with some of the most critical and sensitive problems that they face in their lifetimes. And in order for lawyers to effectively represent their clients, clients must share with them some of their most personal confidences. Lambert's victimization of Credit Victim-1 exemplifies that vulnerability. But so does his victimization of the other victims who are specifically described in the Complaint and PSR: the individual who hired Lambert to draft his will; the accountant who hired Lambert to advise one of his own clients; the small-business owner who hired Lambert to terminate a commercial arrangement; and the small business that hired Lambert to resolve a dispute with a former employee. These were just several among more than two dozen victims whom Lambert deceived by cloaking himself in the veneer of legitimacy associated with a degree from an elite law school, tenure at an elite law firm, and admission to the bar. In so doing, Lambert went beyond undermining the law in the manner that the law is always undermined when a criminal commits a crime. He undermined the legal system, the legal

profession, and the attorney-client relationship. He should be punished accordingly for this grave breach.

## **CONCLUSION**

For the reasons set forth above, this Court should impose a sentence within the Stipulated Guidelines Range of 15 to 21 months' imprisonment.

Dated: November 4, 2019
       New York, New York

                                            Respectfully Submitted,

                                            GEOFFREY S. BERMAN
                                            United States Attorney for the
                                            Southern District of New York

By: _____
          Benjamin Woodside Schrier
          Assistant United States Attorney
          (212) 637-1062