USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA                :

                                                   :      19-CR-571 (VEC)

        -against-                        :

                                                   :      OPINION AND ORDER

JOHN LAMBERT,                          :
a/k/a "Eric Pope,"                       :

                                Defendant.  :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       WHEREAS on November 13, 2019, Centra Tech, Inc. ("Centra Tech") moved to intervene in this matter pursuant to the Crime Victims' Rights Act and the Mandatory Victim Restitution Act, Centra Tech Motion, Dkt. 21;

       WHEREAS Centra Tech alleges that in 2017, it engaged Defendant John Lambert, representing himself to be Eric Pope, an attorney, to provide $11,780 worth of legal services, *id.*;

       WHEREAS Centra Tech seeks to obtain restitution in the amount of $11,780 and to be heard at the time of Lambert's sentencing, *id.*;

       WHEREAS the Government charged Raymond Trapani, Robert Farkas, and Sohrab Sharma, the co-founders of Centra Tech, with fraud and alleged they made fraudulent misrepresentations that caused hundreds of investors to exchange millions of dollars in digital assets for digital currency issued by Centra Tech, Charging Instruments, Exs. A, B, C, Dkt. 41; Gov. Response, Dkt. 26 at 2;

       WHEREAS on July 17, 2019, Raymond Trapani, who served as the Chief Operating Officer of Centra Tech, pled guilty to wire fraud in connection with his activities at Centra Tech, among other offenses, *see* Superseding Information, Ex. B, Dkt. 41 ¶¶ 3, 13–14; Plea Colloquy, Ex. B, Dkt. 41 at 32; *see also* 18-CR-340, Dkts. 146, 153;

WHEREAS on June 16, 2020, Robert Farkas, who was Chief Marketing Officer and later Chief Operating Officer of Centra Tech, pled guilty to conspiracy to commit securities fraud and conspiracy to commit wire fraud, both in connection with his activities at Centra Tech, *see* Superseding Information, Ex. C, Dkt. 41 ¶¶ 3, 7–8, 10–13; Plea Colloquy, Ex. C, Dkt. 41 at 27–28; *see also* 18-CR-340, Dkts. 349, 355;

WHEREAS on July 17, 2020, Sohrab Sharma, who served in multiple roles at Centra Tech, including as President and Chief Technology Officer, pled guilty to conspiracy to commit securities fraud, conspiracy to commit wire fraud, and conspiracy to commit mail fraud, all in connection with his activities at Centra Tech, *see* Superseding Information, Ex. A, Dkt. 41 ¶¶ 3, 7–8, 10–13, 14–17; Plea Colloquy, Ex. A, Dkt. 41 at 29–30; *see also* 18-CR-340, Dkt. 362;

WHEREAS the Government and Lambert oppose Centra Tech's motion to be recognized as a victim of Lambert's criminal conduct, Gov. Response, Dkt. 26; Def. Response, Dkt. 30;

WHEREAS on December 16, 2019, Centra Tech requested an evidentiary hearing on its motion, Centra Tech Letter, Dkt. 29, but later withdrew its request, Gov. and Centra Tech Joint Letter, Dkt. 41;

WHEREAS another purported victim of Defendant's scheme, Williamson Penn Little, has also requested victim's rights, including restitution, Little First Submission, Dkt. 39, Little Second Submission, Dkt. 43;

WHEREAS Little asserts that, using the "Upwork.com" freelancer platform, he contracted with an individual representing himself to be Eric Pope, an attorney, Little Second Submission, Dkt. 43 ¶ 12;

WHEREAS Little contends that he personally paid Pope $480.00 for legal services, using his Visa credit card, *id.* ¶¶ 20–21;

WHEREAS Little asserts that he is entitled to $503,357 in restitution comprised of (i) $159,807 requested by various parties in three lawsuits brought against his company; (ii) $143,500 in costs and attorneys' fees associated with these lawsuits; and (iii) $200,000 to be paid to the members of his company at the time it last operated, *id.* at 18;

WHEREAS on October 2, 2020, the Government and Lambert jointly opposed Little's request to be recognized as a victim entitled to restitution, Gov. and Lambert Joint Letter, Dkt. 47;

WHEREAS on December 7, 2020, the Government informed the Court that Defendant Lambert "used Upwork to advertise his fraudulent legal services, and to communicate with clients and potential clients about those services," Gov. Letter, Dkt. 50;

WHEREAS on December 14, 2020, Little submitted financial documentation showing that he paid Eric Pope $480.00, Little Letter and Exhibits, Dkts. 51, 52;

WHEREAS on December 30, 2020, Little submitted information regarding three lawsuits that were filed against his company and discussing the alleged relationship between the lawsuits and the legal services provided by the individual representing himself to be Eric Pope, Brennan Letter, Dkt. 53, Little Letter, Dkt. 54;

WHEREAS on January 18, 2021, the Court ordered the Government and Lambert to show cause why Little should not be recognized as a victim entitled to $480.00 in restitution and to be heard at the time of sentencing, Order, Dkt. 55;

WHEREAS on January 19, 2021, the Government and Lambert notified the Court that they do not object to Little being recognized as a victim who has a right to be heard at sentencing, assuming his right to restitution would be limited to $480.00, Gov. and Lambert Joint Letter, Dkt. 56; and

WHEREAS the Crime Victims' Rights Act defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense," 18 U.S.C. § 3771(e)(2)(A), and the Mandatory Victim Restitution Act similarly defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ," 18 U.S.C. § 3663A(a)(2);

IT IS HEREBY ORDERED that Centra Tech's motion to intervene to be recognized as a victim is DENIED.  The Court acknowledges that Centra Tech engaged Lambert, posing as an attorney, for legal services and that Lambert was paid $11,780 for that "work."  Centra Tech Motion, Dkt. 21.  But Centra Tech concedes that Lambert was "paid from an account not associated with Centra Tech."  Centra Tech Reply, Dkt. 27 at 3.  *See also* Gov. and Centra Tech Joint Letter, Dkt. 41 at 1 ("For purposes of Centra Tech's motion, the Government and Centra Tech agree . . . that Lambert was paid for those services with money from an account not associated with Centra Tech . . . .").  Without evidence that Centra Tech itself suffered the $11,780 loss, the Court cannot find that Centra Tech was "directly and proximately harmed" by Lambert, 18 U.S.C. § 3771(e)(2)(A); 18 U.S.C. § 3663A(a)(2); accordingly, ordering Lambert to pay restitution to Centra Tech would be inappropriate.[1]

Even if Centra Tech could demonstrate that the funds used to pay Lambert were linked to the company, Centra Tech's motion would still be denied because of the doctrine of unclean hands.  The "equitable maxim that 'he who comes into equity must come with clean hands' . . . .

---

[1]   Centra Tech argues that it has already been recognized by the Government as a victim entitled to restitution because the $11,780 Centra Tech alleges it is owed was included as part of the $46,654.50 forfeiture amount in Lambert's plea agreement.  Centra Tech Letter, Dkt. 33 at 1.  This argument conflates victim's rights with the Government's ability to seek forfeiture of ill-gotten gains.  Assuming someone paid Lambert $11,780 for "legal advice" that he provided to individuals working for Centra Tech, those funds are proceeds of fraud, forfeitable to the Government.  18 U.S.C. § 981(a)(1)(C).  But the fact that the proceeds are subject to forfeiture does not mean that Centra Tech is entitled to restitution in an equal amount.  Different analyses and different law apply to restitution and forfeiture.  *See United States v. Pescatore*, 637 F.3d 128, 138 (2d Cir. 2011) (noting that "[f]orfeiture and restitution are separate remedies with different purposes").

closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). In civil cases, the unclean hands doctrine prevents "persons seeking, through civil lawsuits, to collect debts that arise from unlawful activities." *United States v. Agate*, 613 F. Supp. 2d 315, 321–22 (E.D.N.Y. 2009) (citing *United States v. Martinez*, 978 F. Supp. 1442, 1454 (D.N.M. 1997)). The Second Circuit applied this logic in the context of restitution under the Mandatory Victim Restitution Act, finding that courts should not order restitution when "victims lost ill-gotten gains." *United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008). Put more bluntly, restitution is inappropriate for "parties whose illegally obtained money was subsequently stolen from them." *United States v. Agate*, 613 F. Supp. 2d 315, 321 (E.D.N.Y. 2009).

   Centra Tech has unclean hands. The co-founders of Centra Tech pled guilty to wire fraud (Raymond Trapani), conspiracy to commit securities fraud and wire fraud (Robert Farkas), and conspiracy to commit securities fraud, wire fraud, and mail fraud (Sohrab Sharma), all for their activities while holding leadership positions at Centra Tech. *See* Charging Instruments and Plea Colloquies, Exs. A, B, C, Dkt. 41; 18-CR-340, Dkts. 146, 153, 349, 355, 362. For example, Centra Tech fraudulently misrepresented to investors that it had secured partnerships with Visa and Mastercard to develop debit cards that would enable users to use cryptocurrencies to make purchases with those debit cards. Gov. Response, Dkt. 26 at 3. Centra Tech also boasted that its executive team included individuals who were, in fact, fictitious with fabricated work experience and educational backgrounds. *Id.* As a result of this fraud, hundreds of investors were duped into exchanging millions of dollars in digital assets to purchase digital currency issued by Centra Tech. *Id.* at 2. Centra Tech engaged Lambert after it had raised over a million dollars through its fraud. *Id.* at 13. Accordingly, if Centra Tech had paid Lambert, its request for restitution

would amount to a request for funds Centra Tech obtained through fraud that were subsequently obtained by Lambert through fraud. Because Centra Tech's hands are far from clean,[2] its motion to be recognized as a victim and to receive restitution is DENIED.

IT IS FURTHER ORDERED that Little's motion is GRANTED in part and DENIED in part. The Court finds that Little paid Lambert $480.00 for legal services in September 2017, Little Letter and Exhibits, Dkts. 51, 52, and thus was "directly and proximately harmed as a result of the commission of a Federal offense," 18 U.S.C. § 3771(e)(2)(A), *see also* 18 U.S.C. § 3663A(a)(2). Because Little meets the definition of victim under both the Crime Victims' Rights Act and the Mandatory Victim Restitution Act, *id.,* the Court recognizes him as a victim who is entitled to receive $480.00 in restitution and to be heard at Lambert's sentencing.

But Little's motion to receive $503,357 in restitution to cover the costs of three lawsuits against his company and to pay his former colleagues, Little Second Submission, Dkt. 43 at 18, is denied. "[A] restitution award, whether for lost income or otherwise, cannot be based on mere speculation." *United States v. Messina*, 806 F.3d 55, 69 (2d Cir. 2015) (citing *United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006)). As the Senate Report accompanying the Mandatory Victim Restitution Act noted, "losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution." S. Rep. No. 104-179, at 19 (1995).

The link between the $503,357 loss claimed by Little and Lambert's fraud is speculative at best. Little contends that the $503,357 is comprised of: $159,807 in requests by various plaintiffs in three pending Cook County lawsuits against his company; $143,550 in legal fees and

---

[2] The Government also argued that Centra Tech filed this motion to generate arguments for criminal defendants Sharma and Farkas "to assert in their defense at their criminal fraud trial seeking to blame Lambert (in whole or in part) for the fraud that they perpetrated on Centra Tech investors." Gov. Response, Dkt. 26 at 12. While this may have been true at the time the motion was filed, all three Defendants in the related criminal matter have now pled guilty. *See* Charging Instruments and Plea Colloquies, Exs. A, B, C, Dkt. 41. Accordingly, this argument is moot, and the Court declines to consider it.

costs associated with the Cook County litigation; and $200,000 to be paid to the members of his company at the time it last operated. Little Second Submission, Dkt. 43 at 18. Little's attorney, Terrence Brennan, responded to a Court order instructing Little to provide information about "the specific relationship between each lawsuit and the alleged legal services provided to Mr. Little by the individual representing himself as Mr. Pope." Order, Dkt. 49 at 2. But even with this information, the connection between these lawsuits and Lambert's actions is, at best, speculative and is, in part, simply non-existent.

According to Brennan, in *Nichols v. Bar Nothin' Capital et al.*, 2017 L 012487, Alexander Nichols "assert[ed] one count for fraud and another for unjust enrichment – in sum, claiming Mr. Little induced his contribution by portraying BNC as a stable company with exciting growth potential." Brennan Letter, Dkt. 53 at 3. *See also* Complaint, *Nichols et al. v. Bar Nothin' Capital et al.*, Exhibits to Little Second Submission, Dkt. 43 (filed under seal). But according to the complaint in that action, Nichols made his contribution in July 2017, two months *before* Little retained Lambert. Brennan Letter, Dkt. 53 at 2. Because the lawsuit concerns Little's alleged actions to induce a contribution in July 2017, there is no connection between Lambert's fraudulent practice of law and the facts underlying the *Nichols* lawsuit.

The connection between the second lawsuit, *AIFOT, LLC et al v. Bar Nothin' Capital, LLC et al.*, 2018 L 5528, and Lambert's illegal conduct is speculative. In *AIFOT*, the plaintiffs sued for fraud and unjust enrichment, allegedly relating to problems with "corporate structures and compliance with employment laws" at Little's company. Brennan Letter, Dkt. 53 at 3. Brennan baldly asserts that these "issues derived from advice Mr. Lambert gave Mr. Little." *Id.* But that statement is entirely conclusory and lacks sufficient evidentiary support. Brennan further notes that the *AIFOT* plaintiffs complained "about the companies' overall direction," *id.* at 4, an issue which does not appear to have anything to do with Lambert or his fraudulent legal

advice. Moreover, Brennan's letter states that this lawsuit includes a payment dispute arising under AIFOT's contract; that aspect of the lawsuit, by its nature, cannot be related to Lambert's criminal conduct. *Id.* at 3. In short, Little has not presented sufficient evidence to show that there was a connection between AIFOT's lawsuit and the fraudulent legal advice Little received from Lambert.

The third lawsuit, *Keelan Consulting et al. v. Bar Nothin' Capital et al.*, 2018 L 002547, fares no better. In *Keelan*, the plaintiff sued for fraud, unjust enrichment, and breach of contract. *Id.* at 4. Brennan asserts that, like the *AIFOT* plaintiffs, the *Keelan* plaintiffs also complained about the "companies' overall direction." *Id.* But the direction in which Little's companies were headed has nothing to do with Lambert; Little presents nothing to connect this lawsuit to Lambert's unlawful conduct. Moreover, Brennan reports that Little prevailed on the fraud and unjust enrichment counts and was found liable for breach of contract, apparently arising from a "dispute over payments" due pursuant to a contract between the parties. *Id.* at 4. Little's alleged failure to pay his consulting firm has no relationship whatsoever to Lambert. In short, Little has provided insufficient evidence to support his claim that there was a connection between Lambert's fraudulent legal services and the dispute between Little's company and its consulting firm.

Because Little has presented insufficient evidence from which the Court could conclude that there is a causal link between Lambert's criminal conduct and Little's losses, finding such a connection would be entirely speculative. Accordingly, Little's request for restitution of $159,807 to cover the costs requested by the plaintiffs in these lawsuits and $143,550 for Little's legal fees to defend the actions is denied. Additionally, Little provided no explanation — let alone evidence — why Lambert should be required to pay restitution to Little so he can pay

$200,000 to the members of Little's company at the time it last operated. For all of these reasons, Little's motion seeking $503,357 in restitution is DENIED.

IT IS FURTHER ORDERED that by no later than **Friday, February 26, 2021,** the Government must file a proposed forfeiture and restitution order in this matter. In line with this Opinion, the $11,780 paid for advice given to Centra Tech should be part of the sum to be forfeited by Lambert but should not be part of the restitution order, and the $480.00 paid by Little should be part of both the sum to be forfeited and the amount due as restitution. Lambert's response to the Government's proposed order, if any, is due no later than **Friday, March 5, 2021.**

IT IS FURTHER ORDERED that Lambert's sentencing is scheduled for **Thursday, April 1, 2021, at 2:30 P.M.** in Courtroom 443 of the Thurgood Marshall United States Courthouse, located at 40 Foley Square, New York, New York 10007.

IT IS FURTHER ORDERED that any updates to the parties' pre-sentencing submissions, Dkts. 17, 19, are due no later than **Friday, March 12, 2021**.

IT IS FURTHER ORDERED that, if he chooses to make one, Little's written sentencing submission is due no later than **Friday, March 12, 2021**. Little must include in his submission whether he plans to participate in Lambert's sentencing hearing and if so, whether he will attend in person or participate remotely. If Little elects to participate at the hearing, either in person or remotely, his remarks must be limited to five minutes.

IT IS FURTHER ORDERED that per the SDNY COVID-19 COURTHOUSE ENTRY PROGRAM, any person who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. Please see the enclosed instructions. Completing the questionnaire ahead of time will save time and effort upon entry. Only those individuals who

meet the entry requirements established by the questionnaire will be permitted entry. Please contact chambers promptly if you or your client do not meet the requirements.

IT IS FURTHER ORDERED that interested members of the public may attend the sentencing by dialing 1-888-363-4749, using the access code 3121171 and the security code 0571. All of those accessing the hearing are reminded that recording or rebroadcasting of the proceeding is prohibited by law.

The Clerk of Court is respectfully directed to close the open motion at docket entry 21. The Clerk is further directed to mail a copy of this order to W. Penn Little, 200 West Madison street, Suite 2100, Chicago, Illinois 60606, and note the mailing on the docket.

**SO ORDERED.**

**Date: January 28, 2021**
**New York, NY**

  *(signature)*
  **VALERIE CAPRONI**
  **United States District Judge**

**Instructions for Courthouse Entry**

All members of the public, including attorneys, appearing at a Southern District of New York courthouse must complete a questionnaire and have their temperature taken before being allowed entry into that courthouse.

On the day you are due to arrive at the courthouse, click on the following weblink to begin the enrollment process. Follow the instructions and fill out the questionnaire. If your answers meet the requirements for entry, you will be sent a QR code to be used at the SDNY entry device at the courthouse entrance.

Weblink: https://app.certify.me/SDNYPublic

Note: If you do not have a mobile phone or mobile phone number, you must complete the questionnaire and temperature screening at an entry device at the courthouse.